# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALLEGIANT AIR, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; AIRLINE PROFESSIONALS ASSOCIATION TEAMSTERS, LOCAL UNION NO. 2118,<br><br>　　　　　Defendants. | Case No. 2:25-cv-00863-APG-NJK<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>[ECF Nos. 3, 4] |

　　　　Allegiant Air, LLC intends to amend its General Operations Manual about how and when its pilots are to respond to communications from Allegiant. The pilots, represented by the International Brotherhood of Teamsters, Airline Division and IBT Local 2118 (collectively the Union), disagree with those changes and have threatened to go on strike as soon as Allegiant implements them. Allegiant therefore filed an emergency motion for a Temporary Restraining Order or Preliminary Injunction to prevent the Union from striking. ECF Nos. 3, 4. On May 20-21, 2025 I conducted an evidentiary hearing with live testimony and the opportunity for cross-examination as required under 29 U.S.C. § 107. I find as follows:

　　　　Allegiant is a carrier by air in interstate commerce as defined by the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. Allegiant and the Union are parties to a collective bargaining agreement (CBA). Allegiant's General Operations Manual (GOM) has been in effect for a number of years and is regularly revised. On May 1, 2025, Allegiant implemented a revision of its GOM. On May 15, 2025, the Union objected to Sections 11.3.1.4.C.24 and 11.3.1.5.C.13 of

the revised GOM (the GOM Rules).  The Union alleged that the addition of those rules constitutes a violation of the status quo and a "major dispute" under the RLA and threatened to go on strike if Allegiant did not rescind them.  In particular, the Union claimed that the GOM Rules could be read to require pilots to respond to Allegiant or to monitor for communications from Allegiant while on "required rest," which the Union claimed would violate the CBA and the Federal Aviation Regulations (FARs).

Allegiant voluntarily withheld implementation of the GOM Rules for a few days.  On May 18, 2025, Allegiant notified the Union it was amending the GOM Rules to clarify that off-duty pilots must return any missed contacts "at the earliest practicable time that does not interfere with required rest." ECF No. 1-8 at 2.  Despite this change, the Union continued to threaten a strike.  Thus, Allegiant filed this lawsuit and a motion for a Temporary Restraining Order or Preliminary Injunction.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**<u>Likelihood of success on the merits.</u>**

Allegiant is likely to succeed on the merits of its claim that the Union's threatened strike would be unlawful.  Resolution of this claim turns on whether the parties' dispute is deemed major or minor.  "When a dispute is minor, the parties have no duty to maintain the status quo," the dispute is subject to binding arbitration, and the Union may not strike. *Ass'n of Flight Attendants v. Mesa Air Grp., Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009).  If the dispute is major,

the Union may strike if the parties cannot resolve it through alternative dispute resolution means. *Ry. Lab. Executives Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 704 (7th Cir. 1987).

"Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 307 (1989). "The burden to establish that an action is 'arguably justified' by the terms of the CBA is 'relatively light.' . . . When in doubt, courts construe disputes as minor." *Mesa*, 567 F.3d at 1047. "The court does not consider the merits of the underlying dispute; its role is limited to determining whether the dispute can be characterized as involving the proper application or meaning of a contract provision." *Norfolk & W. Ry. Co.*, 833 F.2d at 704.

Allegiant argues that it has the right under the parties' CBA to adopt the modified GOM Rules. The CBA contains a broad reservation of Allegiant's inherent management rights:

> Except to the extent expressly limited or modified by a specific provision of this Agreement, the Company reserves and retains, solely and exclusively, all of the inherent rights, powers and authority to manage the business and direct its work force and all the matters relating thereto.

ECF No. 1-1 at 12 (§ 1.J.1). Those reserved inherent rights expressly include "directing the Pilot workforce" and "establishing and enforcing rules of conduct." *Id*. The pilots also agreed in the CBA that they would "be governed by all applicable Company rules, regulations, manuals and policies that do not conflict with the terms and conditions of [the CBA] and which may be amended from time-to-time." *Id.* at 12-13 (§ 1.J.2(a)). Nothing in the CBA expressly limits Allegiant's right to adopt the modified GOM Rules. Thus, Allegiant retained the right to create and modify rules governing the pilots, including the GOM Rules at issue here.

3

The CBA includes a provision whereby Allegiant may contact a pilot to discuss a potential disciplinary issue, and the pilot may reasonably delay responding so a Union representative can participate. *Id.* at 124 (§18.A.4). That provision further states that "[n]othing in this paragraph shall be construed to excuse a Pilot from responding to routine [Allegiant] contact regarding non-disciplinary or operational issues." *Id.* At a minimum, this evidences the parties' understanding that Allegiant may and would contact pilots about operational issues. These provisions of the CBA arguably allow Allegiant to adopt the GOM Rules at issue here.

Allegiant also argues that the parties' past practices confirm an implied CBA term that pilots were to timely respond to Allegiant's inquires. Allegiant representative Rodney Hardesty testified that when he was an active Allegiant pilot, the standard practice was to respond to communications from Allegiant even though not required on days off. Current Allegiant pilot James Cole disagreed with Hardesty's recollection of those past practices. The Ninth Circuit has held that such competing testimony supports a finding that the dispute is minor. *Mesa*, 567 F.3d at 1050 ("Past practices under the CBAs may or may not have created an implied term, and there is evidence to support contentions on both sides. The existence of an implied term is therefore arguable and must be decided in arbitration.").

Based on the foregoing, the parties' disagreement is a "minor" dispute under the RLA that must be resolved through binding arbitration and for which a strike would be unlawful. Thus, Allegiant is likely to succeed on its claim.

**Irreparable harm and balancing the equities**

Absent an injunction, Allegiant will suffer substantial, immediate, and irreparable harm. Allegiant's reputation and goodwill with the public will be tarnished if flights are canceled and passengers are stranded. Allegiant will also likely lose significant revenue from canceled flights

due to a strike. The Union admits that Allegiant has no monetary remedy against the Union for such losses.

Conversely, the Union will suffer little harm if a strike is enjoined. The Union claims that its pilots will be at risk of violating the FARs if they comply with the GOM Rules. But the Federal Aviation Administration has accepted the GOM Rules (Exhs. 11, 12),[1] which makes it doubtful that a pilot would be charged with violating the FARs by complying with those rules. The Union also contends that it would lose strength at the bargaining table by having its proposed strike enjoined. But that alleged harm is speculative, minimal, and likely would be mitigated if the Union prevails at an arbitration about the GOM Rules. Finally, the Union claims its pilots will be harmed because their "Off Duty" time would be interrupted by Allegiant's inquiries. But the Union offers no evidence as to how many such inquires have been made and are likely to be made, how much time is typically required to respond, and how burdensome it would be to respond. Overall, the balance of harms thus weighs in favor of granting injunctive relief.

**Public interest**

The public interest in avoiding strikes to the traveling public is embodied in the RLA. The purposes of the RLA are to "avoid any interruption to commerce or the operation of any carrier" arising from labor disputes and "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering . . . working conditions." 45 U.S.C. § 151a. *See also Int'l Bhd. of Teamsters, Airline Div. v. Allegiant Air, LLC*, 788 F.3d 1080, 1086 (9th Cir. 2015) ("Congress passed the RLA to

---

[1] This reference is to exhibits that were admitted during the May 20-21, 2025 hearing on Allegiant's motion for injunction.

expediently help railroads and their employees resolve conflicts, before disagreements turned into strikes that would paralyze interstate commerce."); *Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Emps.*, 286 F.3d 803, 805 (5th Cir. 2002) ("It is well established that 'the major purpose of Congress in passing the Railway Labor Act was to provide a machinery to prevent strikes.'" (citation omitted)). And because Allegiant primarily flies to underserved airports only a few days each week, customers impacted by a strike would be stranded with few or no alternatives for air transportation. The public interest therefore favors a preliminary injunction.

## **PRELIMINARY INJUNCTION**

I THEREFORE ORDER that Allegiant's Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction **(ECF Nos. 3, 4) is granted.**

I FURTHER ORDER that the International Brotherhood of Teamsters, Airline Division and IBT Local 2118 (collectively the Union), its divisions, lodges, locals, officers, agents, employees, members, and all persons acting in concert or participation with any of them, are restrained for the duration of this order from authorizing, encouraging, permitting, calling, engaging in or continuing any strike, work stoppage, picketing, slowdown, sickout, or other self-help against Allegiant or its operating subsidiaries over any dispute relating to Sections 11.3.1.4.C.24 and 11.3.1.5.C.13 of Allegiant's GOM.

I FURTHER ORDER the Union and its officers to immediately undertake all reasonable efforts to prevent and discourage the Union's divisions, lodges, locals, officers, agents, employees, members, and all persons acting in concert with any of them, from engaging in conduct enjoined by this order. Specifically, the Union must undertake at least the following specific efforts:

a) immediately instruct in writing all Union members employed by Allegiant to refrain from self-help against Allegiant;

b) notify all Union members employed by Allegiant, by the most expeditious means possible, of the issuance and contents of this order, and include in that notice a directive from the Union to immediately cease from going on strike and engaging in other self-help tactics; and

c) provide to Allegiant a copy of the instructions and notice referenced above by May 27, 2025.

I FURTHER ORDER that, by May 23, 2025 Allegiant must deposit $10,000 or a bond in that amount with the Clerk of the Court as security under Federal Rule of Civil Procedure 65(c). To the extent the Union believes additional security is necessary, it may file a motion seeking that.

I FURTHER ORDER that this injunction takes effect immediately and will remain in effect until modified by this court or a final judgment is entered.

DATED this 22nd day of May, 2025, *nunc pro tunc* to May 21, 2025 at 4:55 p.m.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE